## Tankersley et al. v. Sell.

January 10, 1950.

Kritz Krueger for appellants.

E. R. Denney for appellee.

MORRIS, COMMISSIONER—Reversing.

Appellee, plaintiff below, in a suit against Preston, Fred, and J. B. Tankersley sought to eject them from a described boundary of land. She charged that she was the owner, and that defendants had wrongfully entered and cultivated a small strip of about 4 acres on the south side of and within her boundary; that they refuse her demand to vacate and claimed title and possession. She sought judgment for immediate possession and damage for rent and profits.

J. B. Tankersley was the father of the other two defendants, and he and they joined in answer and counterclaim. The father died while the suit was pending, and thereafter the sons filed substituted answer and counterclaim, presenting the same claim as set up in the original answer. In this pleading they describe a small boundary south of the land described in the petition. They allege that the father purchased the described tract from Margaret Drew in 1903.

834

For their defense and cause they say that plaintiff is wrongfully claiming ownership of a strip of ground within their boundary containing 1⅛ acres to which they hold title; that in December 1938 the father conveyed the tract, including the disputed strip to Preston, and that on July 27, 1948, Preston conveyed the same boundary to Fred. They allege that the present owners and predecessors in interest have had actual adverse possession of the boundary, including the part in dispute, for more than 43 years.

The only deed exhibited by Mrs. Sell shows that she purchased her described boundary from the Drew heirs in 1943, and defendants alleged that if plaintiff purchased her boundary since 1903 it was land covered by the title conveyed to Preston and Fred, and his predecessors in interest and they have had adverse possession since 1903, and now in possession of all of said land, and the deed to plaintiff is as to a third party null and void.

They ask that they be adjudged the owners of the disputed strip and that plaintiff's petition be dismissed. A reply in general denial joined issue. The court heard proof, and at the conclusion each party moved for peremptory instruction. The court sustained plaintiff's motion and directed the jury to, and it returned a verdict for plaintiff.

The court then, without opinion or showing reason for his action entered judgment reciting that plaintiff was the owner and entitled to immediate possession of the tract described in her petition. Appeal was granted, and here the only point urged by appellants is that the court erred in sustaining plaintiff's and in overruling defendants' motion for directed verdict.

Mrs. Sell acquired her deed in November 1943; she exhibits her deed from the Drew heirs, but does not refer to or introduce prior deeds, perhaps due to the fact that at the outset of trial a stipulation was introduced which read: "It is stipulated by parties to this action that plaintiff and her grantors hold title traceable to the Commonwealth and for the purpose of trying this action the plaintiff is now relieved of the necessity of proving her title to the Commonwealth."

Original deeds introduced by appellants show that

Fred purchased the boundary described from Preston; Preston obtained title to the same boundary on December 27, 1938, from the father, who obtained title by deed from Margaret Drew in November 1903. It seems as if both titles were traceable to the Drew common source.

That there is an overlap of the two boundaries described in the several pleadings there is no doubt. All parties admit the fact, though the strip varies in area according to proof. A surveyor testified for plaintiff that according to her deed and from his survey her boundary included the disputed strip which he thought was "three acres more or less." He had no other deeds. Another surveyor testifying for defendants said he surveyed by the Ballard patent and the Tankersley deeds; that the disputed strip or corner, as he described it, is in the Tankersley boundary and contained about 1½ acres.

Some of the foregoing testimony does not become all important in concluding the rights of the parties as the case develops though defendants make the best showing. We say this because in appellants' brief it is said that while his motion for new trial was based on five or more grounds, "We waive each of said grounds except first, the court erred in directing a verdict for plaintiff, and to award damages to the plaintiff," and overruling his motion.

Counsel for appellant "stakes his right to reversal" on the showing that the deed accepted by appellee was void under Sec. 372.070, KRS, because when she accepted the deed in November 1943, defendants were in the actual adverse possession of and cultivating the disputed strip. This is true as to Preston, who according to proof, had been in possession for more than ten years.

Mrs. Sell only offered herself and her surveyor as witnesses. She testified that when she bought the land in 1943 she thought the disputed strip contained about 3 acres, "according to her deed." On cross-examination she said she bought the tract in October, but did not have the deed made until later; she admits that there was a crop on the land that year, but she did not know whether it was defendants' crop or not. She did

not take possession until "the next spring," when she sowed it in oats and grass, and the defendants plowed up the crop and "ordered me off; they told me it belonged to them." Two or three times she was asked whether the Tankersleys were ever in possession of the property in dispute, and she replied, "not that I know of." She was asked the pointed question, "At the time you bought this property were these defendants or either of them in possession of this tract of land?" and she replied, "I told you not that I knew of. I didn't live there."

Preston testified that his father had possession of the tract, "including the disputed strip until the present; that he cut timber and cleared it, * * * and Joe Drew cut some and his father stopped him; Drew had been dead twenty years or more. After he (Preston) bought the tract * * * built a house and barn on it, and raised crops every year thereafter." He admits that his father never did more than cut timber on the tract. He said that when plaintiff undertook to cultivate the small strip he told her it belonged to him. Fred testified substantially as his brother had, and that he had rented a small strip of the disputed strip in 1943 from Preston, and in that year had raised crops on the strip.

Appellee in his brief makes it appear that by reason of the stipulation referred to above, defendants had "stipulated themselves out of court." As we read the stipulation it only agrees that plaintiff had title "traceable to the Commonwealth." This did not prevent defendants from raising the issues of champerty and adverse possession.

Since appellee correctly charges appellant with abandonment of the adverse possession theory, it is not necessary to refer to or discuss the several cases cited by appellee to show a failure on the part of defendants to establish title by adverse possession, which failure appellants, we think, admit by pitching their right to reversal on a fair showing, not disputed by appellee, that Preston Tankersley was in possession under color of title at the time appellee bought or accepted deed for her boundary. Appellant relies upon the provisions of KRS 372.070 which makes void the sale or conveyance of any land, or the right or title thereto of which another person is in adverse possession. We have con-

strued this so frequently that it is hardly necessary to cite authority, but our opinion, clearly in point and conclusive, in Rader v. Howell, 246 Ky. 261, 54 S. W. 2d 914, cites cases covering almost every phase of the meaning and application of the statute. A reference to KRS Annotations of the section quoted will lead to many others.

Appellee seemingly takes the position that since adverse possession for the period of limitation failed, the plea of null and void deed also fails. The words "adverse possession" as used in the statute, mean that the possession must be shown to be of that character and dignity as would in the statutory period ripen into title by adverse possession. Hall v. Fordson Coal Co., 296 Ky. 227, 179 S. W. 2d 414.

Being of the opinion that the deed to plaintiff, insofar as it includes the disputed strip falls within the inhibition of the statute, the court was in error in sustaining plaintiff's motion for a favorable verdict. The judgment is reversed with directions to set aside that judgment, and for proceedings consistent with this opinion. Original deeds filed as exhibits may be withdrawn on request.

Judgment reversed.